IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD RANDOLPH, SR., | No. C 06-07476 SI |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CITY OF EAST PALO ALTO; EAST PALO ALTO POLICE DEPARTMENT; BRIAN FRAYER; KEVIN FUNG; and STEPHEN KALB, | |
| Defendants. | |

On February 29, 2008, the Court heard oral argument on plaintiff's and defendants' cross-motions for summary judgment. Having considered the arguments of counsel and the papers submitted, the Court hereby DENIES plaintiff's motion for summary judgment and GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment.

**BACKGROUND**

Plaintiff Reginald Randolph, Sr., brings this suit against the City of East Palo Alto, the East Palo Alto Police Department, Officer Brian Frayer, Officer Stephen Kalb, and Sergeant Kevin Fung. The parties agree on the following facts. Around 2:00 a.m. on October 25, 2005, plaintiff was arrested by defendants Frayer and Kalb and held in custody in San Mateo County Jail from October 25, 2005 to June 20, 2006, when the criminal charges against him were dropped. Frayer first came into contact with plaintiff when he decided to perform a safety check after noticing plaintiff slouched over in the driver's seat of a parked vehicle in a high crime area known for drug sales and use, shootings, and prostitution,

among other activities. After placing his spotlight on the vehicle, Frayer approached it and noticed a woman crouched under the dashboard on the passenger side of the vehicle. Frayer attempted to make contact with the woman, but she would not communicate with him. Plaintiff then rolled down his window and held out his license and registration, and Frayer went around to the driver's side to retrieve the documents. According to Frayer, plaintiff retracted the documents and rolled up the window just as Frayer approached the driver's side, Chalmers Decl. ex. 1 at 4; according to plaintiff, he withdrew the documents because he had held them out for "about a minute and a half," could see nothing in the floodlights, and Frayer never came to take them, Co Decl. ex. 3 at 30. According to plaintiff, he then tried to exit the car from the driver's side door but Frayer told him to get back in the car. *Id.* The parties appear to agree that plaintiff and the unknown woman then attempted to exit the car from the passenger's side but stopped, locked that door, and attempted to flee from the driver's side of the car once Frayer came around to the passenger's side. This back-and-forth happened several times before Frayer decided to arrest the vehicle's occupants for obstructing, delaying, and resisting a police officer. At that point, Frayer attempted to break the driver's side window with his baton, and plaintiff and his companion fled out of the passenger door.

The parties also agree that defendant Kalb arrived at the scene as reinforcement shortly thereafter and apprehended plaintiff a few blocks away from the vehicle. Frayer stopped pursuing the unknown woman and joined Kalb in making the arrest of plaintiff. A search of plaintiff revealed a glass tube and a rock of crack cocaine. Frayer then walked plaintiff back to the parked vehicle without Kalb's assistance. As they were walking back, for a disputed reason, plaintiff landed face first on the ground and sustained multiple injuries. Kalb observed that plaintiff was bleeding from his face and was diagnosed with a closed head injury, fractured tooth, simple laceration of the forehead, simple laceration of the lip, abrasion of the face, abrasion and contusion of the left shoulder, contusion of the left elbow, and strain of the neck and back. Chalmers Decl. ex. 2. Defendants allege that plaintiff fell because he had been going limp and dragging his feet. *Id.* at ex. 1 at 5; Co Decl. ex 2 at 34. Plaintiff alleges that Frayer tripped him while pulling up on plaintiff's handcuffs, causing him to fall to the ground face-first. Challa Decl. ex. B at 46-47. Plaintiff also alleges that he and the unknown woman fled the car out of fear for their safety. *Id.* at 45.

Following plaintiff's arrest and detention, the state court held a suppression hearing in which the court ruled that defendants had the right to search plaintiff. *See* Co Decl. ex. 4. After a motion to reconsider that decision was filed, a second state court judge was scheduled to hear the matter but did not because Frayer was not present. *See* Challa Decl. ex. F. The second judge indicated that the first hearing may have been held absent statutory jurisdiction, and also indicated that the suppression question may have been incorrectly decided. *Id.* at 6, 16. The district attorney's office dropped the charges against plaintiff before the motion for reconsideration was ever heard. Co Decl. ex. 7.

Plaintiff filed his complaint in this Court on December 6, 2006, alleging violations of 42 U.S.C. §§ 1981 and 1983; false arrest and imprisonment; battery; violation of California Civil Code § 51.7; intentional and negligent infliction of emotional distress; general negligence; and negligent hiring, training and supervision. Both parties now move for summary judgment.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non- moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.*; *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The Court may not "find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).

**DISCUSSION**

**I.  Plaintiff's claims of unreasonable search and seizure, false arrest, and false imprisonment**

Plaintiff's first cause of action states a § 1983 claim against defendants Frayer and Kalb for, among other things, depriving plaintiff of the right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment. Plaintiff's fourth cause of action alleges state law claims of false arrest and false imprisonment. Each of these claims turns on the question whether defendants had probable cause to arrest plaintiff. Both parties now move for summary judgment on these claims. Defendants argue that there was probable cause and that defendants therefore have immunity from the state and federal claims relating to the arrest and search of plaintiff. In the alternative, defendants argue that the doctrine of collateral estoppel bars these claims because the state court already concluded that probable cause existed to arrest plaintiff. In response, plaintiff contends there was no probable cause to arrest him and that the state court's suppression hearing does not preclude relitigation of the probable cause question in this Court because the state court lacked jurisdiction to hold the suppression hearing and because a motion for reconsideration of the hearing was pending when the criminal complaint against plaintiff was dropped.

Because it could be dispositive of defendants' motion for summary judgment on these claims,

4

the Court will first address defendants' collateral estoppel argument. A plaintiff in a civil case may be estopped from contesting an issue that was determined in a prior criminal proceeding. *See Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 762 (9th Cir. 1991); *Allen v. McCurry*, 449 U.S. 90, 95-98 (1980). "In determining the collateral estoppel effect of a state court judgment federal courts must, as a matter of full faith and credit, apply that state's law of collateral estoppel." *Bugna v. McArthur*, 33 F.3d 1054, 1057 (9th Cir. 1994). The California Supreme Court has held "that any issue necessarily decided in a prior criminal proceeding is conclusively determined as to the parties if it is involved in a subsequent civil action." *Teitelbaum Furs, Inc. v. Dominion Ins. Co., LTD.*, 58 Cal. 2d 601, 607 (1962). More specifically, California courts of appeal have also held that a "finding of probable cause by the municipal court for the stop and arrest is dispositive of and conclusive on the issue of the false arrest since the probable cause in the criminal proceeding is identical to the probable cause required in a later civil complaint." *McGowan v. City of San Diego*, 208 Cal. App. 3d 890, 896 (Cal. Ct. App. 1989).

In California, a final determination in a prior criminal proceeding has collateral estoppel effect if the following conditions are met:

> (1) the prior conviction must have been for a serious offense so that the defendant was motivated to fully litigate the charges; (2) there must have been a full and fair trial to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must of necessity have been decided at the criminal trial; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior trial.

*Ayers v. City of Richmond*, 895 F.2d 1267, 1271 (9th Cir. 1990); *see also McCutchen v. City of Montclair*, 73 Cal. App. 4th 1138, 1144 (Cal. Ct. App. 1999). The possibility that the state court's decision was erroneous does not preclude application of the doctrine of collateral estoppel. *See United States v. Real Property*, 59 F.3d 974, 980 (9th Cir. 1995) (citing *Allen*, 449 U.S. at 101).

Here, during a hearing on plaintiff's motion to suppress the evidence in the criminal case brought against him, Judge Thomas McGinn Smith determined that defendant Frayer "did have the right to search" plaintiff during the incident in question. Co Decl. ex. 4 at 34. The Court need not decide whether this determination has preclusive effect under California law because, contrary to defendants' contention, it is not at all clear that the state court actually reached the issue of whether defendant Frayer had probable cause to arrest plaintiff. The discussion in state court indicates that the question was only whether the *search* of plaintiff was valid, not the *arrest* of plaintiff. That is, the search of plaintiff could

5

have been valid as incident to a *Terry* stop if defendant Frayer had reasonable suspicion that plaintiff had been committing a crime. *See United States v. Grigg*, 498 F.3d 1070, 1074-75 (9th Cir. 2007). The parties acknowledged this in their state court argument, as the prosecution argued to the court that defendant Frayer "clearly [had] *reasonable suspicion* that something [was] going on." Co Decl. ex. 4 at 33 (emphasis added). The state court then determined merely that defendant Frayer had the right to search plaintiff, making no mention of whether Frayer had probable cause to arrest him. *See id.* at 34. The Court therefore rejects defendants' argument that "the criminal court already determined that there was probable cause for the arrest," Defendants' Amended Motion for Summary Judgment at 12, and does not reach plaintiff's arguments regarding the procedural or jurisdictional problems that may have enshrouded the state court suppression hearing.

As to whether there was probable cause to arrest plaintiff, the Court will first address the question of probable cause in the context of whether defendants are entitled to qualified immunity from plaintiff's federal law claims relating to the arrest and search. "Qualified immunity serves as a defense to § 1983 claims against government officers 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Rodis v. City and County of San Francisco*, 499 F.3d 1094, 1097 (9th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When determining whether qualified immunity applies, courts must consider the elements of a qualified immunity defense "in proper sequence." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The first step in the two-step qualified immunity inquiry is whether, "[t]aken in the light most favorable to the party asserting the injury," the facts demonstrate that "the officer's conduct violated a constitutional right." *Id.* at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established" at the time of the incident. *Id.*

Taking the facts in the light most favorable to plaintiff, the Court finds that defendant Frayer had probable cause to arrest plaintiff, and thus his arrest of plaintiff did not violate the Constitution. In determining whether an officer had probable cause to make an arrest, "the specific circumstances

6

surrounding the arrest are an indispensable part of the analysis," such that the Court "examine[s] the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Rodis*, 499 F.3d at 1098 (internal quotation marks omitted). Probable cause "'exists when there is a fair probability or substantial chance of criminal activity.'" *Id.* (quoting *United States v. Rodriguez*, 164 F.3d 1072, 1078 (9th Cir. 2006)).

Here, there is little dispute between the parties about the events leading up to plaintiff's arrest. The parties agree that defendant Frayer first approached plaintiff in a parked car because he wanted to perform a safety check, given the early morning hour, the high-crime area, and the fact that plaintiff appeared to be slouched over in his seat. The parties also agree that Frayer observed an unknown woman crouching on the floor in front of the passenger seat, and that when he tried to communicate with her, she would not roll down her window to talk with him. Further, the parties agree that plaintiff then opened his window and slid some documents out the window, causing Frayer to move around to the driver's side of the vehicle, and that plaintiff pulled the documents back into the car before Frayer could obtain them. Defendants allege, and plaintiff does not dispute, that from that point on, Frayer's safety check turned into a game of evasion, with plaintiff and the unknown female attempting to flee the vehicle from the passenger side once the documents were retracted, and then attempting to flee from the other side once Frayer came around to the passenger side. This happened a few times until finally plaintiff and the female managed to run away from the car and plaintiff was eventually apprehended by defendants Frayer and Kalb. Thus, it is self-evident that after Frayer approached the vehicle, more was going on than, as plaintiff contends, simple "[i]nnocent activity" in which "Plaintiff together with the woman were simply relaxing in the car without any incident." Plaintiff's Cross-Motion for Summary Judgment at 21.

These undisputed facts demonstrate that Frayer had probable cause to arrest plaintiff once plaintiff taunted Frayer by holding documents out the driver's window and then attempted to flee out of the passenger-side door. Even assuming, as plaintiff alleges, that he pulled the documents back into the car because he was tired of holding them out for Frayer, this action could have appeared to a reasonable officer to be an evasive, time-saving measure meant to distract the officer so that the

7

vehicle's occupants could escape and avoid criminal liability for whatever activity they had been engaging in. As the Supreme Court has stated, "[o]ften enough, the Fourth Amendment has to be applied on the spur (and in the heat) of the moment, and the object in implementing its command of reasonableness is to draw standards sufficiently clear and simple to be applied with a fair prospect of surviving judicial second-guessing months and years after an arrest or search is made." *Atwater v. City of Lago Vista*, 532 U.S. 318, 347 (2001). In the heat of the moment, and based on the totality of circumstances, an objectively reasonable officer would have had reason to believe that there was a "fair probability" that plaintiff was engaging in criminal activity. Plaintiff argues he fled not because a crime was taking place, but out of fear for his safety. Even assuming plaintiff feared that a uniformed police officer was attempting to physically harm him, rather than question him, plaintiff's actions, viewed from the perspective of an objectively reasonable officer who was unaware of what was going on inside plaintiff's head, would lead that officer to believe criminal activity was afoot and that it was for that reason plaintiff was fleeing after goading the officer to one side of the vehicle or the other.

At the very least, a reasonable officer could have believed plaintiff was violating California Penal Code § 148, which makes it a crime to "willfully resist[], delay[], or obstruct[] any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment." Cal. Penal Code § 148(a)(1). This relatively minor offense would permit defendants to arrest plaintiff: "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater*, 532 U.S. at 354. In addition, a reasonable officer certainly could have suspected that there was a fair probability of other criminal activity, given the time of day, the high-crime location, plaintiff's attempts to flee the vehicle, and the odd behavior defendant Frayer observed.[1]

---

[1] Relying on *Morgan v. Woessner*, 997 F.2d 1244, 1253 (9th Cir. 1993), plaintiff has suggested that defendant Frayer actually arrested plaintiff the moment Frayer approached the vehicle to check on plaintiff's safety, *see* Plaintiff's Cross-Motion for Summary Judgment at 10. Plaintiff, however, has put forward no facts indicating that plaintiff did not reasonably believe he was free to leave when Frayer first approached plaintiff's vehicle, and has in fact agreed with defendants that plaintiff would have been free to leave had plaintiff shown Frayer the registration documents he dangled out the window. *See id.* at 4, lns. 5-10; *id.* at 10, lns. 2-6. Taking the facts in the light most favorable to plaintiff, there is no evidence that plaintiff was under arrest – or that Frayer had any intention to arrest plaintiff – until after plaintiff baited Frayer by holding documents out the window and attempted to flee the vehicle.

8

Because defendant Frayer had probable cause to arrest plaintiff, Frayer's arrest of plaintiff did not violate plaintiff's constitutional rights. In addition, defendant was able to conduct a search of plaintiff incident to arrest, without running afoul of the Fourth Amendment. *See*, *e.g.*, *United States v. Hartz*, 458 F.3d 1011, 1019 (9th Cir. 2006) ("Because Wulick had probable cause to arrest Hartz, searching inside the truck was a constitutionally permissible search incident to arrest, as was a full search of Hartz's person."). Frayer therefore is entitled to qualified immunity on plaintiff's unreasonable search and seizure claim, and the Court need not address the second step of the qualified immunity inquiry. *Saucier*, 533 U.S. at 201. This immunity also applies to defendant Kalb, who was called to the scene by Frayer and participated in the arrest as a result of Frayer's call for backup. *See United States v. Ramirez*, 473 F.3d 1026, 1037 (9th Cir. 2007) ("Where one officer knows facts constituting reasonable suspicion or probable cause . . . and he communicates an appropriate order or request, another officer may conduct a warrantless stop, search, or arrest without violating the Fourth Amendment.").

Having established that defendants Frayer and Kalb did not violate the Fourth Amendment when they arrested and searched plaintiff, the Court also concludes that Frayer and Kalb are immune from plaintiff's fourth cause of action, which states claims for false arrest and false imprisonment. California law provides that "[t]here shall be no civil liability on the part of, and no cause of action shall arise against, any peace officer . . . or law enforcement officer . . . acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest" if "[t]he arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful." Cal. Penal Code § 847(b)(1). Under California law, an arrest is lawful if an "officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence," Cal. Penal Code § 836(a)(1), or if the officer "has probable cause to believe that the person to be arrested has committed a felony, whether or not a felony, in fact, has been committed," *id.* § 836(a)(3). Based on the undisputed facts, and for the reasons discussed above, the Court holds that defendant Frayer – and, by extension, defendant Kalb – had probable cause to believe plaintiff was committing a public offense in his presence, and thus that he reasonably believed the arrest was lawful. *See*, *e.g.*, *Hamilton v. City of San Diego*, 217 Cal. App. 3d 838, 844-45 (Cal. Ct. App. 1990). Accordingly, the Court GRANTS

9

defendants' motion for summary judgment on plaintiff's fourth cause of action and on plaintiff's first cause of action as it relates to plaintiff's right to be free from unreasonable searches and seizures. This ruling also applies to plaintiff's seventh, eighth, and ninth causes of action, but only insofar as they are based on the search and arrest of plaintiff. The Court DENIES plaintiff's cross-motion for summary judgment on these claims.

## II.     Plaintiff's claims of racial discrimination

Plaintiff's third and sixth causes of action state claims against defendants Frayer and Kalb for racial discrimination pursuant to 42 U.S.C. § 1981 and California Civil Code § 51.7, respectively. In addition, plaintiff's first cause of action states a § 1983 claim against Frayer and Kalb for, among other things, depriving plaintiff of the right to equal protection as guaranteed by the Fourteenth Amendment. Defendants move for summary judgment on plaintiff's third and sixth causes of action and, presumably, on plaintiff's first cause of action as well, as it relates to racial discrimination. Defendants argue that plaintiff has put forth no evidence of racial animus or motivation, other than the fact that plaintiff is African American and defendants Frayer and Kalb are not African American. It is true that plaintiff has not pointed to any direct evidence of racial animus on the part of these officers, such as statements about plaintiff's race during his arrest. That said, plaintiff has pointed to evidence suggesting that defendant Frayer has been involved in two prior incidents of excessive force and one incident of harassment, all involving suspects or community members who plaintiff claims are "minorities." *See* Challa Decl. exs. L, M, N.[2] Without deciding whether these incidents actually occurred or involved racial discrimination, the Court finds that they, combined with the incident involving plaintiff, are sufficient to create a genuine issue for trial as to whether defendant Frayer was motivated by racial animus when he arrested

---

[2] Defendants object to these exhibits, arguing, *inter alia*, that they are not relevant, are hearsay, and amount to prior bad acts that cannot be used to show action in conformity therewith. The Court overrules all of defendants' evidentiary objections. These investigations into prior complaints made against Frayer are relevant under Rules 401 and 402 of the Federal Rules of Evidence and meet the hearsay exceptions under either Rule 803(6) or Rule 803(8). In addition, plaintiff is introducing these investigations not to show action in conformity therewith, but to show Frayer's intent and motive and to show the city's knowledge of these prior complaints. *See* Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts . . . may . . . be admissible for other purposes, such as proof of motive, opportunity, intent . . . .").

10

plaintiff. As to defendant Kalb, however, plaintiff has put forth no evidence suggesting that Kalb might have been racially motivated, and plaintiff has acknowledged that Kalb participated in the arrest only in response to Frayer's call for back-up. Therefore, with respect to plaintiff's claims alleging racial discrimination, the Court DENIES defendants' motion for summary judgment as to defendant Frayer and GRANTS defendants' motion for summary judgment as to defendant Kalb.

### III. Plaintiff's claims of excessive force and battery

Plaintiff's first cause of action states a § 1983 claim against defendants Frayer and Kalb for, among other things, using excessive force against him in violation of the Fourth, Fifth, and Fourteenth Amendments. Similarly, plaintiff's fifth cause of action alleges that Frayer and Kalb committed battery against plaintiff. Both parties now appear to move for summary judgment on these claims and on related claims of negligence and infliction of emotional distress. Summary judgment on these claims is not appropriate, however, because there are disputed issues of material fact regarding how plaintiff fell and sustained his physical injuries. Defendants assert that plaintiff resisted arrest by dragging his feet and going limp, and that he fell as a result of going limp. Co Decl. ex. 2 at 34. Plaintiff, on the other hand, asserts that defendant Frayer tripped him on purpose. Challa Decl. ex. B at 46-7. The Court therefore DENIES both motions for summary judgment on plaintiff's claims relating to Frayer's use of force and battery. As to defendant Kalb, however, plaintiff has not put forth any evidence suggesting that Kalb participated in the alleged use of excessive force by Frayer or used any force himself. To the contrary, plaintiff stated in his deposition that Kalb simply "stood there and looked" while Frayer was escorting plaintiff back to the car, *id.* at 46, and that Kalb witnessed, rather than participated in, Frayer's use of force, *id.* at 47. Accordingly, the Court GRANTS defendants' motion for summary judgment as to plaintiff's claims of excessive force and battery against defendant Kalb.

### IV. Plaintiff's claim for *Monell* liability against the city and department

Plaintiff's second cause of action claims that the City of East Palo Alto, the East Palo Alto Police Department, and Sergeant Fung are liable under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Both parties now move for summary judgment on this cause of action.

11

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, *see Monell*, 436 U.S. at 690; however, a municipality may not be held vicariously liable for the unconstitutional acts of its employees under a theory of respondeat superior, *see Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691. A plaintiff may demonstrate a policy or custom to support municipal liability in a number of ways. A plaintiff "may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a 'longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity.'" *Gillette v. Delmore*, 979 F. 2d 1342, 1346 (9th Cir. 1992) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989)) (internal quotation marks omitted). In addition, a plaintiff "may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 1346-47.

To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy or custom; (3) that the policy or custom amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy or custom was the moving force behind the constitutional violation. *See Plumeau v. Sch. Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

Here, plaintiff alleges that the municipality's policy or custom amounted to deliberate indifference to plaintiff's rights and was the moving force behind the violation of his rights to be free from unlawful search and seizure, excessive force, and racial discrimination. As discussed above, the only constitutional violations remaining in this litigation are plaintiff's excessive force and equal protection or racial discrimination claims. The only evidence plaintiff points to in support of his contention that the city and department had a policy or custom of deliberate indifference to plaintiff's constitutional rights is that (1) two citizen complaints alleging excessive force and the use of pepper spray, as well as one citizen complaint alleging harassment, had been filed against defendant Frayer, and the department failed to discipline him after investigating the complaints; and (2) that an organizational assessment in 2000 and a grand jury investigation in 2003 revealed that the department needed to overhaul its procedures and supervision of police officers.

12

Viewing this evidence in the light most favorable to plaintiff, the Court does not see how the fact that prior complaints were filed against Frayer, without more, can constitute a genuine issue for trial as to whether defendants had a policy or custom of condoning excessive force violations. Plaintiff has put forth no evidence about these prior incidents other than the investigatory reports themselves. As defendants have noted, plaintiff has offered "no evidence in the form of contrary witness testimony or empirical studies," and plaintiff's evidence "merely shows that excessive force claims were investigated." Defendants' Opposition at 19, 20. Plaintiff has thus failed entirely in his attempt to demonstrate that the city erred in its findings that excessive force had not been used. *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1234-35 (9th Cir. 1989) (summary judgment appropriate where plaintiff had alleged prior incidents of excessive force but had failed to present any probative evidence suggesting that excessive force had indeed been used or that the use of excessive force was pervasive enough to rise to the level of custom).

Plaintiff's other argument, that the department's internal assessments and efforts to overhaul the hiring, training, and supervision of officers is evidence of a policy or custom of deliberate indifference to the violation of constitutional rights, also falls short. The mere fact that the police department may have been in the process of undergoing internal changes, or may have recognized that reforms were necessary, does not raise a genuine issue for trial as to whether the department was deliberately indifferent to the violation of constitutional rights. Additional evidence would surely be needed, such as evidence that the department knew or should have known that the inadequacy of its training and supervision of officers was "so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992) (internal quotation marks omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered.") (internal citations omitted). Accordingly, the Court GRANTS defendants' motion for summary judgment on plaintiff's claim that the city had an official policy or custom that caused a violation of plaintiff's constitutional rights.

13

As to defendant Fung, who conducted an internal investigation of plaintiff's claim of excessive force after the incident, he could subject the city and department to liability if plaintiff proves that Fung had final policy-making authority and ratified Frayer's unconstitutional action. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."); *Gillette*, 979 F. 2d at 1346-47. Fung could also be liable in his individual capacity under § 1983 and not subject to qualified immunity if plaintiff proves at trial that Fung participated in the deprivation of plaintiff's constitutional rights. *See Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) ("As Officer Chew's superior, Chief Samuels can be held liable in his individual capacity if he participated in the deprivation of Watkins' constitutional rights."). Taking the facts in the light most favorable to plaintiff, the Court finds that Fung could be liable under either theory "'for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation . . . or for conduct that showed a reckless or callous indifference to the rights of others,'" such as by ratifying Frayer's alleged use of excessive force. *Id.* (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)). Indeed, the Ninth Circuit has explained that it is clearly established that a supervisor may not "condone[ ], ratif[y], [or] encourage," *id.*, a subordinate's use of excessive force, *id.* at 1093-94 ("Since it was clearly established in *Larez* that a jury could hold Chief Samuels liable for ratifying Officer Chew's use of excessive force (if the jury finds it to be such), we affirm the district court's denial of qualified immunity to Chief Samuels on summary judgment."). The Court therefore DENIES defendants' motion for summary judgment as to defendant Fung and as to the city and department only insofar as Fung is demonstrated to have had final policy-making authority and to have ratified Frayer's unconstitutional action. The Court also DENIES plaintiff's motion for summary judgment as to defendant Fung and plaintiff's other *Monell* claims.

### V. Plaintiff's claim for negligent hiring, training, and supervision

Plaintiff's tenth cause of action alleges that the City of East Palo Alto and its Police Department were negligent in hiring, training, and supervising defendants Frayer and Kalb. Defendants move for summary judgment on this claim, arguing that they are immune under California Government Code §

14

820.2 and, in the alternative, that plaintiff has failed to put forth any evidence of defendants' negligence.

In general, in California "[a] public entity is not liable for an injury." Cal. Gov't Code § 815(a). California law provides that there are two avenues by which a public entity, such as the City of East Palo Alto, may be liable for an injury. The first avenue is where a statute provides for liability by creating a mandatory duty. *Id.* §§ 815 & 815.6; *Forbes v. County of San Bernardino*, 101 Cal. App. 4th 48, 53 (Cal. Ct. App. 2002). "An enactment creates a mandatory duty if it requires a public agency to take a particular action." *County of L.A. v. Superior Court*, 102 Cal. App. 4th 627, 639 (Cal. Ct. App. 2002). A "litigant seeking to plead the breach of a mandatory duty must specifically allege the applicable statute or regulation." *Id.* at 638 (internal quotation marks omitted).

Here, plaintiff has not alleged any mandatory, statutory duty that defendants violated, so plaintiff presumably seeks to hold defendants liable under the second avenue by which a public entity may be liable for an injury. This liability may lie where an employee of the public entity would be liable for the injury: "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code § 815.2(a). This derivative liability does not apply, however, where "the employee is immune from liability." *Id.* § 815.2(b). That is, "public entities are immune [from vicarious liability] where their employees are immune, except as otherwise provided by statute." *Caldwell v. Montoya*, 10 Cal. 4th 972, 980 (Cal. 1995)

Defendants appear to argue that the city and police department could not be vicariously liable because their employees enjoy discretionary immunity from plaintiff's tenth cause of action. California Government Code § 820.2 provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. Discretionary act immunity extends to basic governmental policy decisions entrusted to broad official judgment. *Caldwell*, 10 Cal.4th at 976. Because "almost all acts involve some choice among alternatives, and the statutory immunity thus cannot depend upon a literal or semantic parsing of the word 'discretion,'" California

15

courts distinguish between an employee's ministerial and policy decisions in determining whether the decision was discretionary. *Caldwell*, 10 Cal. 4th at 981. Ministerial decisions are those that involve the "'operational' functions of government," whereas policy decisions are those that involve the "'planning' . . . functions of government." *Id.* Immunity is reserved for basic policy decisions which have been expressly committed to coordinate branches of government, "'areas of quasi-legislative policy-making [which] are sufficiently sensitive' to call for judicial abstention." *Id.* (quoting *Johnson v. California*, 69 Cal. 2d 782, 794 (1968)). In contrast, there is no immunity for ministerial decisions that "merely implement a basic policy already formulated." *Id.*

The Court does not agree with defendants that the hiring, training, and supervision of particular employees are policy decisions that implicate the planning functions of government. Rather, defendants' decisions to hire Officer Frayer and provide him with certain levels of training and supervision are ministerial decisions in which defendants were simply carrying out the day-to-day operations of their government. *See Taylor v. Los Angeles Dept. of Water and Power*, 144 Cal. App. 4th 1216, 1239 (Cal. Ct. App. 2006) ("The decisions regarding job assignments, training and promotion may not be characterized as a quasi-legislative policy-making [decision which] is sufficiently sensitive . . . to call for judicial abstention from interference that might . . . affect the . . . decision-making process of a coordinate branch of government.") (internal quotation marks omitted) (alteration in original). Defendants do not cite any cases to the contrary and instead rely on *Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426 (Cal. Ct. App. 1988), which addressed formal disciplinary proceedings and has been rightly regarded as misapplying the law of the California Supreme Court, *see Chapin v. Aguirre*, 2007 WL 1660740 *7 (S.D. Cal. June 7, 2007). For these reasons, the Court finds that § 820.2 does not provide immunity from plaintiff's claim of negligent hiring, training, and supervision.

Defendants also argue that the Court should grant summary judgment in their favor because plaintiff has failed to put forth evidence of any negligence regarding the hiring, training, and supervising of Frayer and Kalb. The Court agrees that there is no genuine dispute as to whether Frayer and Kalb were qualified to be hired by the city and department, because plaintiff has not pointed to any evidence to the contrary. However, there is a genuine dispute as to whether defendants were negligent in training and supervising these officers, given Frayer's alleged actions during the incident as well as during prior

16

incidents. For these reasons, the Court GRANTS defendants' motion for summary judgment on plaintiff's negligent hiring claim, and DENIES defendants' motion for summary judgment on plaintiff's negligent supervision and training claims.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment [Docket No. 96]. The Court also DENIES plaintiff's motion for summary judgment [Docket No. 102].

**IT IS SO ORDERED.**

Dated: March 1, 2008

SUSAN ILLSTON
United States District Judge